**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **THOMAS K. AQUILLA** | : | |
| **Plaintiff** | : | |
| **v.** | : | **Civil Case No. RWT 02-3138** |
| **WASHINGTON GAS RESOURCES CORP.** | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

In business dealings, it is often said that when selling one's business, "cash is king." This is a David and Goliath story in which David did not follow that basic business maxim when he sold his business to Goliath. Instead, he included a provision for a deferred contingent payment based on post-closing profitability that had "trouble written all over it." *Montgomery County Council v. Leizman*, 268 Md. 621, 633, 303 A. 2d 374, 380 (1973). After the sale, the Goliath of our story concluded that it had paid quite enough for David's business, and declined to make any additional payment, citing the alleged unprofitability of David's business after the closing. David sued Goliath alleging, among others things, that Goliath had "cooked the books" so as to deny him the remaining monies due for the sale of his business. After lengthy pretrial combat between the parties, the matter was finally presented to a jury which awarded to David the maximum amount allowed under the contract between the parties.

The matter, however, did not end there. David had a remaining arrow in his quiver. His agreement with Goliath provided that "[i]n the event any party is required to resort to litigation to

enforce its rights or defend itself hereunder, the parties agree that any judgment awarded to or order entered in favor of the prevailing party shall include all litigation expenses including costs and reasonable attorney's fees expended by the prevailing party." (Stock Purchase Agreement, ¶ 10.7)

When David was unsuccessful in convincing Goliath to pay voluntarily the amount that he had actually expended on the litigation, he filed a Motion for Attorney's Fees [Paper No. 171]. This time it was Goliath who claimed that David had "cooked the books" and, in a lengthy response [Paper No. 172] urged that the Court give David's claimed litigation expenses a "haircut." Taking a dim view of any discounts at the behest of Goliath, David has requested a hearing. While Local Rule 105.6 authorizes counsel to request a hearing, it provides that "[u]nless otherwise ordered by the Court, however, all motions shall be decided on the memoranda without a hearing." Having already presided over a motions hearing and seven days of a jury trial between the parties, the Court's enthusiasm for more public discourse is understandably diminished and it will, therefore, bring this matter to a merciful conclusion without a hearing. For reasons explained below, the Court concludes that David's Fee Petition needs a bit of a trim, but not the haircut proposed by Goliath.

The David of our story is the Plaintiff, Thomas K. Aquilla ("Aquilla"), who entered into a contract to sell his business, American Combustion Industries, Inc., to the Goliath of our story, the Defendant, Washington Gas Resources Corp. ("Washington Gas"). While colorful "David and Goliath" analogies can be made concerning the struggle between the parties, their final dispute can be resolved easily by application of basic principles of law. One of the leading cases in the field of awards of attorney's fees is *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This case is one of many that relies upon the Lawyers' Rules of Professional Conduct (and predecessor codes of a similar nature) which require that a lawyer's fee "shall be

reasonable." (Rule 1.5) The current version of Rule 1.5 provides that in determining the reasonableness of a fee, the factors to be considered include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

"Where recovery of private damages is the purpose of . . . litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In addition, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Accordingly, when a district court makes a determination of the reasonableness of a fee, the "most critical factor" in that determination is "the degree of success obtained." *Id.* at 436. *See also Doe v. Chao*, 435 F. 3d 492 (4th Cir. 2006). The Court will now address the *Johnson* factors.

**Time and Labor Required; Novelty and Difficulty of Questions Involved; Requisite Skill**

In applying the first factor, a "trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities."

*Johnson*, 488 F.2d at 717. In this regard, the undersigned brings to this task the benefit of thirty-seven years in the practice of law, including fifteen years as the head of the office of a major law firm and service on its managing board.

Bringing this experience to bear (which brings back painful memories of the scrutiny of time and billing records), the Court has carefully reviewed the legal bills submitted by Aquilla, and believes that application of its own experience, as well as application of this Court's local rules, requires a substantial award, but not in the full amount claimed. Aquilla did not defeat Washington Gas without a struggle, and this Court observed the lawyering that produced a jury verdict awarding the maximum amount allowable under the contract between the parties.

As to the core controversy between the parties, Aquilla hit a veritable legal home run. However, Washington Gas makes much of the fact that Aquilla's original complaint contained alternative theories of recovery, most of which were found wanting by this Court. The alternative theories, however, were based on the same nucleus of facts that were relied upon by the Plaintiff in the verdict ultimately returned by the jury, and thus this is not a case in which the Plaintiff presented "distinctively different claims for relief . . . based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Rather, this is a case in which Aquilla's claims for relief involve a "common core of facts . . . based on related legal theories." *Id.* at 435.

In these circumstances, the Supreme Court observed in *Hensley* that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discreet claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id*.

It is true, as Washington Gas points out, that Aquilla "switched horses in midstream" and selected new counsel to represent him when summary judgment was entered against him on his alternative legal theories of recovery. However, this change of horses is of no moment in this litigation because discovery had been completed, and the change of horses simply resulted in a new face to present Aquilla's case in the courtroom at trial. Having reviewed the statements submitted by Aquilla, the Court finds no inefficiencies of any significant nature in this transition, and will not punish Aquilla for his change of counsel, especially in light of the fact that the change occurred at a major breakpoint in the litigation where it could be effected efficiently.

The inquiry, however, does not end there. Aquilla seeks an additional "*quantum meruit*" award of $111,450.00, and asserts that this amount has been claimed by his first team of lawyers. However, the Fee Petition does not include a copy of the Fee Agreement, nor a copy of any billings demanding the additional compensation. Aquilla claims that this additional amount results from the fact that the original Fee Agreement, which has not been furnished to the Court, provided for a reduced hourly rate in consideration of a contingency, and that when the first team of lawyers was discharged, it demanded a *quantum meruit* fee in accordance with Maryland law on the termination of lawyers originally hired under a contingency. *See*, *Somuah v. Flachs*, 352 Md. 241, 721 A.2d 680 (1998). As previously noted, the Plaintiff failed to provide a copy of the Fee Agreement, any billing received for the "*quantum meruit*," and any justification for the fee based

on *quantum meruit* factors. Accordingly, the Court declines to award the additional $111,450.00. Moreover, to the extent that any documentation might have been provided, the Court believes that the amount would, in any event, have been reduced because of the pursuit of alternative legal means of recovery for which there was little, if any, basis. While the exploration of such alternative theories ordinarily should not be punished, at the very minimum, "rough justice" would require a reduction of the full amount claimed by the additional "*quantum meruit*" claimed by Aquilla.

The Court also declines to award the fees requested for services rendered by the firm of Brown & Michaels, P.C. No explanation is given for the necessity for the services of this firm, and they appear to be related to the submission of Freedom of Information Act requests to the General Services Administration. It would appear, but it is far from clear, that these requests were made in order to determine the revenues derived by Washington Gas from projects performed by it or one of its subsidiaries for GSA. The Court, however, cannot make an award based upon speculation or supposition, and finds the justification for the fees of this firm to be dubious, at best. Accordingly, the amount of the fee request has been further reduced by $5,540.24, representing the total amount of the fees claimed for the firm of Brown & Michaels, P.C.

**Likelihood That Acceptance of Particular Employment Will Preclude Other Employment by the Lawyer**

It would not appear that this factor is applicable to the fee requested in this case.

**Fee Customarily Charged in the Locality**

The Court has reviewed the hourly rates charged by each of the attorneys whose services are the subject of the Affidavit in support of an award of attorneys' fees, and finds them to be reasonable.

**Amount Involved and Results Obtained**

The amount of the requested fee in relation to the results obtained is not disproportionate. The exemplary result achieved by Aquilla's lawyers did not come without a fight. Washington Gas used its resources to mount, as was its right, an aggressive defense to thwart Aquilla from achieving his goal. Achievement of that goal was not without a toll. The Court observed in *McKnight v. Circuit City Stores, Inc.*, 14 Fed.Appx. 147, 153 (4th Cir. 2001):

> A defendant is indeed entitled to use any litigation strategy that it desires and pursue an aggressive defense to achieve its goal; however, the defendant cannot complain, and should not be surprised, when such a strategy increases the fees and expenses for which it may be held liable as a non prevailing party.

**Time Limitations Imposed by the Client or the Circumstances**

In this case, there appear to have been no time limitations imposed either by the client or the circumstances. Application of this factor is thus not pertinent to this case.

**Nature and Length of the Professional Relationship**

This factor would appear to have limited applicability to this case, and would not affect the amount of the award.

**Experience, Reputation and Ability of the Lawyers**

The Court is familiar with the experience, reputation and ability of Aquilla's first team of lawyers, but was not familiar with these characteristics of his second team until the trial of this case. Based upon their performance at trial, it has little doubt as to the ability of Aquilla's second team. Indeed, the moniker of "second team" seems misplaced, and rather the term should be "varsity" based upon the result achieved.

**Whether the Fee is Fixed or Contingent**

The fees and expenses actually charged by Aquilla's lawyers in this case were neither fixed nor contingent and, accordingly, this factor would not appear to have any application in this case.

**Discussion**

Applying all of the factors set forth above, the Court concludes that litigation expenses in the amount of $799,466.49 should be awarded. While Washington Gas has gone to great lengths to critique various aspects of the amounts claimed by Aquilla, the Court concludes those concerns are, for the most part, legally wanting, and essentially agrees with the arguments contained in Aquilla's Reply Memorandum.

For the foregoing reasons, a separate Order will be entered making an award in the amount of $799,466.49.[1]

Date: July 21, 2006

/s/
Roger W. Titus
United States District Judge

[1]By reason of clerical oversight, a judgment against Washington Gas was not entered by the Clerk of this Court at the time of receipt of the jury's verdict. Accordingly, the accompanying Order enters judgment on the jury's verdict, *nunc pro tunc*, and also makes an award of attorney's fees in accordance with this Memorandum Opinion.